IN THE JUDICIAL CIRCUIT OF THE
SIXTH JUDICIAL CIRCUIT IN AND FOR
PASCO COUNTY, FLORIDA
CIVIL DIVISION

AGNES LAVOIE, as Personal Representative
of the Estate of JACQUELINE CAYCA
CANDIA LAVOIE,

   Plaintiff,

-vs-

JENNIFER L. HARPER, MD and PREMIER    CASE NO.:
COMMUNITY HEALTHCARE GROUP,
INC

   Defendants.
_____/

## COMPLAINT

COMES NOW, Plaintiff, AGNES LAVOIE, as Personal Representative of the Estate of JACQUELINE CAYCA CANDIA LAVOIE, by and through the undersigned attorney, hereby sue the Defendants, JENNIFER L. HARPER, MD (hereinafter referred to as "DR. HARPER"), and PREMIER COMMUNITY HEALTHCARE GROUP, INC (hereinafter referred to as "PREMIER COMMUNITY HEALTHCARE"), and alleges as follows:

1. This is an action for damages in excess of the jurisdictional limits of this Court, exclusive of costs, interest and attorneys' fees.

2. All conditions precedent to the bringing of this action have been performed or waived. Specifically, this is an action arising out of medical negligence, and Plaintiff has complied with the provisions of Florida Statutes Section 766.106, by serving upon Defendants by Certified Mail, a Notice of Intent to Initiate Litigation.

3. Pursuant to 766.104, Fla. Stat., the undersigned attorney hereby certifies that a reasonable investigation has been made in connection with this action and gives rise to a good-faith belief that grounds exist for the filing of this action against Defendants.

4. Pursuant to Florida Statues, Section 768.28, Plaintiff has provided appropriate notice of this claim to Florida Department of Financial Services, University of Florida Board of Trustees, US Department of Health and Human Services, and Plaintiff has complied with all prerequisites of said statute.

5. Plaintiff's counsel has received a corroborating written opinion from an expert as defined by 766.102, Fla. Stat., that there exists evidence of medical negligence.

6. At all times material hereto, all Defendants named herein, were healthcare providers, licensed and conducting business (more specifically, providing medical care and treatment) within Pasco County, State of Florida, to members of the public, including the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE.

7. Plaintiff, AGNES LAVOIE, has been duly appointed as Personal Representative of the Estate of JACQUELINE CAYCA CANDIA LAVOIE, Deceased. A copy of the Letters of Administration is attached hereto as Exhibit "A."

8. At all times material hereto, Defendant, DR. HARPER, was an employee/agent of Defendant, PREMIER COMMUNITY HEALTHCARE, and all acts of negligence committed by Defendant, DR. HARPER, were committed during and in the course and scope of this employment/agency with Defendant, PREMIER COMMUNITY HEALTHCARE.

9. At all times material hereto, there existed a healthcare provider/patient relationship between each of the named Defendants herein and the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE.

10. Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE was a 30 year old, married, pregnant patient that presented to AdventHealth Zephyrhills on September 5, 2019.

11. The Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE presented for induction as she was 39 weeks pregnant.

12. The stated reason for induction was that the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE lived a long distance from the hospital.

13. Prenatal labs were ordered along with a type and screen and it was noted that the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE was blood type O.

14. There were no prenatal complications noted.

15. On September 6, 2019 at 9:15 AM cervical examination showed that the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE was 2 centimeters dilated and 80% effaced.

16. Fetal movement was present and the electronic fetal monitoring strip was normal.

17. By 4:15 PM the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE'S membranes were ruptured and she was 4 centimeters dilated.

18. The strip was still category one.

19. At 6:00 PM the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE was 6/90/-1 and by 8:44 PM the patient was fully dilated, 100% effaced and the baby at +2 station.

20. The Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE was being cared for by her obstetrician, Defendant, DR. HARPER, and Defendant, DR. HARPER noted at that time to prepare for delivery.

21. According to Defendant, DR. HARPER'S note, and consistent with the fetal monitor strip ending, the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE delivered a baby boy at 8:50 PM.

22. The baby's apgars were noted to be 8 and 9.

23. Initially the baby was placed on mom's abdomen and thereafter removed to the nursery.

24. Of note, Defendant, DR. HARPER'S orders from September 5th were that the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE was at risk for post-partum hemorrhage.

25. Presumably this order and subsequent type/screen was entered due to the fact that the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE was a primigravida and potentially delivering a week early.

26. Based on orders already in place, the hospital had matched blood ready to address a post-partum complication such as hemorrhage.

27. After delivery at 8:50 PM, 27 minutes passed before Defendant, DR. HARPER noted some lengthening of the cord at 9:17 PM.

28. The long delay in placental separation should have given some advance warning that a potential placental adherence issue existed.

29. Defendant, DR. HARPER had the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE push and the entire placenta and uterus came out at that time.

30. Defendant, DR. HARPER'S differential diagnosis was placental adherence vs. uterine inversion, which actually was not a differential diagnosis as the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE had both.

31. Placental adherence and uterine inversion are both obstetrical emergencies requiring timely protocol institution to prevent and/or address post-partum hemorrhage.

32. Defendant, DR. HARPER stated in her report that she recognized the high risk complication however the massive transfusion protocol was not initiated at that time.

33. Nursing contacted the OR team and anesthesia and the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE was in the OR 6 minutes later at 9:23 PM.

34. Defendant, DR. HARPER called for backup and Dr. Williams arrived while the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE was in the operating room.

35. While in the operating room both obstetricians noted a large sac filled with blood.

36. Despite the noted bleeding the massive transfusion protocol was still not instituted.

37. A decision was made to rupture the sac and upon rupture 2,000 milliliters of blood was expressed.

38. Subsequently the placenta was separated from the uterine mass whereupon the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE became hemodynamically unstable.

39. Placental pathology revealed a large disruption of the placenta on the maternal side.

40. The separation of the placenta from the uterus occurred at 9:33 PM and it was only at this time that the massive transfusion protocol was instituted for rapid fluid and blood replacement.

41. Orders show that Defendant, DR. HARPER ordered 4 units of Leukored which essentially is unmatched trauma blood used during dire emergencies.

42. Every hospital should at all times have 4 units readily available.

43. Those 4 units never arrived.

44. According to the records the order for 4 units of Leukored was automatically cancelled by the hospital's computer systems due to the fact that unmatched blood is not used when the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE already has matched blood in existence, which occurred based on Defendant, DR. HARPER'S orders, one day earlier.

45. It does not appear that Defendant, DR. HARPER, due to her already having ordered matched blood, recognized that the emergency order had been cancelled at that time.

46. The doctors were waiting for stat blood arrival while the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE further decompensated. A code blue was called.

47. With no blood timely arriving Defendant, DR. HARPER noted that the blood bank was called again to send 4 units of packed red blood cells and 4 units of fresh frozen plasma, meanwhile the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE was bleeding out on the operating table.

48. It should be noted that while waiting for the blood no action was taken to insert an arterial line so that once the blood did arrive it could be transfused rapidly.

49. Records indicate that consent for blood transfusion, and transfusion did not occur until one hour after the order for massive transfusion protocol was instituted.

50. Even that initial order was 16 minutes delayed from when it should have been instituted.

51. According to Defendant, DR. HARPER'S records after receiving 8 units of red packed blood cells and 3 units of fresh frozen plasma the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE'S hemoglobin was only 10.8.

52. Undoubtedly, while waiting for blood to arrive the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE lost well more than half of her blood volume.

53. During the code blue the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE was defibrillated 3 times.

54. Ultimately the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE was resuscitated however the long delay, and massive blood loss, resulted in significate cardiomyopathy.

55. While a hysterectomy would have timely addressed the hemorrhage complication the doctors ultimately proceeded with surgically placing the uterus in its anatomical position using a bakri balloon.

56. After resuscitation and the approximation of the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE'S uterus she was brought to the intensive care unit.

57. The Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE was on a ventilator and cardiology was consulted.

58. Testing revealed significant cardiac injury from hemorrhagic and cardiac shock.

59. The Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE never recovered from this initial stress event and ultimately expired on September 8, 2019, leaving a husband and newborn baby.

## COUNT I
## DIRECT NEGLIGENCE OF DEFENDANT, DR. JENNIFER L. HARPER

60. Plaintiff re-alleges and re-adopts all the previous allegations contained in Paragraphs 1 through 59, and makes them a part of this Count I.

61. At all times material to this cause there existed a physician/patient relationship between the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE and the Defendant, DR. HARPER.

62. As a result of the physician/patient relationship the Defendant, DR. HARPER, owed the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE, a duty to provide her with medical care and treatment consistent with the prevailing professional standard of care which is that level of medical care and treatment which is deemed acceptable and appropriate by a reasonably prudent similar healthcare provider.

63. The Defendant, DR. HARPER, did breach that duty and did fail to provide medical care to Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE that met the prevailing professional standard of care including but not limited to the following respects:

- Delay in implementing an emergency rapid transfusion protocol
- Inappropriate delay in issuing appropriate orders and performing maneuvers to address an obstetric emergency
- Inappropriate delay in ordering and instituting the institutional massive transfusion protocol
- Untimely delay in performing the appropriate procedures in a patient with post-partum hemorrhage due to uterine inversion
- Ordering 4 units of Leukored, when matched blood was already available which resulted in the computer cancelling the order for emergency blood products and caused further delay.

64. As a direct and proximate result of the negligent acts alleged herein, Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE, died on September 8, 2019.

65. Plaintiff/Decedent's surviving spouse, Benjamin Lavoie, has suffered the loss of his wife's support and services, and the loss of his wife's companionship and protection, and he has further incurred mental pain and suffering as the result of his wife's death.

66. Benjamin Lavoie Jr., as a surviving child of Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE, have suffered the loss of his mother's support and services and the loss of his mother's companionship, society, love, affection and solace.

67. All damages suffered by Benjamin Lavoie and Benjamin Lavoie Jr., are continuing in nature and permanent.

68. The Estate of JACQUELINE CAYCA CANDIA LAVOIE, and/or the surviving spouse, Benjamin Lavoie, has suffered a loss of net accumulations, loss of earnings and medical and funeral expenses, both in the past and in the future, and also the losses are continuing in nature and permanent.

WHEREFORE, Plaintiff, demands judgment against the Defendant, DR. HARPER, including but not limited to, compensatory damages. Costs, prejudgment interest on medical bills and such other relief as this Court deems just. Plaintiff further demands a trial by jury on all issues so triable.

## COUNT II
## VICARIOUS NEGLIGENCE OF DEFENDANT, PREMIER COMMUNITY HEALTHCARE GROUP, INC

69. Plaintiff re-alleges and re-adopts all the previous allegations contained in Paragraphs 1 through 59, and makes them a part of this Count II.

70. At all times material to this cause there existed a healthcare provider/patient relationship between the Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE and the Defendant, PREMIER COMMUNITY HEALTHCARE.

71. DR. HARPER owed a duty of care to Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE to provide medical care and treatment which met the prevailing professional standard of care for similar healthcare providers. Defendant, PREMIER COMMUNITY

HEALTHCARE is vicariously liable for the conduct of Defendant, DR. HARPER. Defendant, DR. HARPER and vicariously Defendant, PREMIER COMMUNITY HEALTHCARE were negligent and deviated from the acceptable standard of care and/or acted with reckless disregard in the following ways:

- Delay in implementing an emergency rapid transfusion protocol
- Inappropriate delay in issuing appropriate orders and performing maneuvers to address an obstetric emergency
- Inappropriate delay in ordering and instituting the institutional massive transfusion protocol
- Untimely delay in performing the appropriate procedures in a patient with post-partum hemorrhage due to uterine inversion
- Ordering 4 units of Leukored, when matched blood was already available which resulted in the computer cancelling the order for emergency blood products and caused further delay.

72. As a direct and proximate result of the negligent acts alleged herein, Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE, died on September 8, 2019.

73. Plaintiff/Decedent's surviving spouse, Benjamin Lavoie, has suffered the loss of his wife's support and services, and the loss of his wife's companionship and protection, and he has further incurred mental pain and suffering as the result of his wife's death.

74. Benjamin Lavoie Jr., as a surviving child of Plaintiff/Decedent, JACQUELINE CAYCA CANDIA LAVOIE, have suffered the loss of his mother's support and services and the loss of his mother's companionship, society, love, affection and solace.

75. All damages suffered by Benjamin Lavoie and Benjamin Lavoie Jr., are continuing in nature and permanent.

76. The Estate of JACQUELINE CAYCA CANDIA LAVOIE, and/or the surviving spouse, Benjamin Lavoie, has suffered a loss of net accumulations, loss of earnings and medical and funeral expenses, both in the past and in the future, and also the losses are continuing in nature and permanent.

WHEREFORE, Plaintiff, demands judgment against the Defendant, PREMIER COMMUNITY HEALTHCARE, including but not limited to, compensatory damages. Costs, prejudgment interest on medical bills and such other relief as this Court deems just. Plaintiff further demands a trial by jury on all issues so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been served upon the Defendants, and each of them, by personal service of process, and a copy has been provided by Certified Mail, Return Receipt Requested, to the State of Florida, Department of Health, Division of Medical Quality Assurance, Consumer Services Unit, 4052 Bald Cypress Way, Bin C-75, Tallahassee, Florida 32399-3275, on this 12th day of May, 2021.

_____
Armando T. Lauritano, Esq.
Morgan & Morgan Tampa, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505; Fax: (813) 223-5402
Florida Bar #: 0902519
Attorney for Plaintiffs
Primary Email: ATLPleadings@forthepeople.com
Secondary Email: ABoskovich@forthepeople.com